**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MINH DUC NGUYEN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-2531-SLP** |
| | ) | |
| **FRED FIGUEROA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

# REPORT AND RECOMMENDATION

Petitioner Minh Duc Nguyen, a citizen of Vietnam proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] Chief United States District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 3). In accordance with the expedited briefing schedule, (Doc. 9), Respondents timely filed a Response to the Petition. (Doc. 11). Petitioner timely filed a Reply. (Doc. 12). For the reasons set forth below, the undersigned recommends that Petitioner's Petition be **DENIED.**

---

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 3).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

## I. Factual Background and Procedural History

Petitioner is a citizen of Vietnam who was admitted to the United States as a refugee on or about July 1, 1975. (Doc. 11, at Ex. 2, at 4). On June 7, 1978, Petitioner became a Lawful Permanent Resident. (*Id.*) On October 24, 1991, Petitioner was convicted of Vehicle Theft and Burglary. (*Id.*) Petitioner last entered the United States on or about November 15, 2002. (*Id.*) On December 18, 2002, an immigration judge ordered Petitioner removed from the United States to Vietnam. (*Id.* at Ex. 3, at 1). Petitioner reserved the right to appeal the order of removal to the BIA, and the appeal was due by January 17, 2003. (*Id.*) Petitioner did not file an appeal to the BIA. (*Id.* at Ex. 1, at 1).

On March 18, 2003, 59 days later, Petitioner was released on an Order of Supervision ("OOS") "[b]ecause the Service ha[d] not effected [his] deportation or removal during the period prescribed by law." (Doc. 12, at Ex. 1, at 2). The OOS requires Petitioner to "report on the 1st Thursday of every month at 9:00 AM . . . unless [he is] granted written permission to report on another date." (*Id.*) At each check-in, the next check-in was scheduled in writing for several months to a year later. (*Id.* at Ex. 2). From the date of his release through October 29, 2020, Petitioner met all reporting requirements and fulfilled all conditions of his release. (*Id.*) The last written report date was scheduled for October 29, 2020, at 8:00 AM, but when Petitioner arrived at the report location, the ICE office was closed due to the Covid-19 pandemic. (*Id.* at 4; Doc. 1, at 4). From October 29, 2020, to the day of his recent arrest, neither Petitioner nor Respondents initiated contact to schedule a check-in. (Doc. 12, at 2). Petitioner did not report to ICE at all for nearly 6 years. (*Id.*)

On July 28, 2020, Petitioner was convicted of Intoxication Assault with a Vehicle with Serious Bodily Injury. (Doc. 11, at Ex. 2, at 5).

On September 3, 2026, ICE surveilled Petitioner's home to find and arrest him. (*Id.* at 2). ICE identified Petitioner and arrested him without incident, taking him into custody. (*Id.*) On the day of his arrest, Petitioner was served a Notice of Revocation of Release, stating that he violated a condition of release because he "[f]ailed to report to ICE as instructed under the conditions of [Petitioner's] release." (*Id.* at Ex. 4, at 1). The Revocation also states that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and that "ICE is seeking a travel document to effect [Petitioner's] expeditious removal to Vietnam." (*Id.*) That day, an ICE officer conducted an informal interview "to afford the alien an opportunity to respond to the reasons for revocation." (*Id.* at Ex. 5). The interviewing officer took and recorded the Petitioner's oral statement, which reads, "I apologize for not reporting to ICE. It was during covid that reporting office shut down and I just didn't report afterwards. I admit that I am at fault for this action."[3] (*Id.*)

Petitioner filed the instant Petition on September 16, 2026, when he had been in immigration detention for 14 days. (Doc. 1, at 15). As of the date of this Report and Recommendation, Petitioner has been in immigration detention for 51 days, and he remains detained at the Diamondback Correctional Facility. Petitioner alleges that removal is not

[3] In his Reply, Petitioner doubts the authenticity of this recorded statement, but Petitioner does not provide a statement that contradicts it. (Doc. 12, at 2). Nevertheless, the undersigned finds it unnecessary to determine the authenticity of the statement for the Court to rule on the Petition.

significantly likely in the reasonably foreseeable future because for 23 years Respondents have failed to remove Petitioner or produce a travel document. (*Id.* at 8; Doc. 12, at 5).

Respondents allege the following facts related to removal efforts:

> 12. On September 3, 2026, . . .
>
> 13. ICE ERO began working on NGUYEN's removal from the United States.
>
> 14. The government of Vietnam requires travel documents for Vietnam Nationals[.]
>
> 15. The government of Vietnam requires the Immigration Judge Order of Removal and the associated criminal summary translated into the Vietnamese language for the travel document application.
>
> 16. On or about September 11, 2026, ICE-ERO sent the Immigration Judge Order of Removal and the associated criminal summary to the Lionbridge translation service for translation into the Vietnamese language the request to have NGUYEN complete a family information Sheet and travel document application.
>
> 17. On or about September 14, 2026, ICE-ERO received NGUYEN's family information Sheet, self-declaration, and travel document application.
>
> 18. On or about September 17, 2026, ICE ERO received the translated Immigration Judge Order of Removal and the associated criminal summary translated into the Vietnamese language from the Lionbridge translation services. ICE ERO sent NGUYEN's completed travel document application to ERO Removals and International Operations ("HQRIO") for review and approval.
>
> 19. On or about October 6, 2026, ICE ERO emailed HQRIO requesting a status update of NGUYEN's travel document.
>
> . . .
>
> 21. ICE ERO has successfully facilitated removals [of] Vietnam nationals from the United States and continues to do so.

(Doc. 11, at Ex. 1, at 2-3). Respondents provide a chart that tallies ICE removals of Vietnam nationals: 63 in 2024, 586 in 2025, and 1,258 in 2026. (*Id.* at 3).

**II. Petitioner's Claims and Respondents' Responses**

Petitioner raises four grounds for relief:

(1) Violation of the Immigration and Nationality Act ("INA") and related ICE regulations by re-detaining him without "an individualized determination that changed circumstances render [his] removal from the United States significantly likely in the reasonably foreseeable future." (Doc. 1, at 10).

(2) Violation of substantive due process because his re-detention is effectively indefinite, not justified by any material change in circumstances, and not subject to any individualized review. (*Id.* at 12).

(3) Violation of the Administrative Procedure Act ("APA") because his release was revoked "without determining that changed circumstances render his removal significantly likely in the reasonably foreseeable future." (*Id.* at 13).

(4) Declaratory judgement providing that Respondents ignored the INA, its regulations, and the Due Process Clause of the Fifth Amendment when they re-detained Petitioner. (*Id.* at 13-14).

Petitioner argues that (1) "Respondents violated 8 C.F.R. § 241.13 by re-detaining [P]etitioner without notice of the reasons for revocation or any opportunity to respond," (*id.* at 5); (2) "Respondents bear the burden of establishing a significant likelihood of removal in the reasonably foreseeable future to justify revocation and re-detention under 8 C.F.R. § 241.13(i)(2)," (*id.* at 6); (3) "Petitioner's continued detention violates *Zadvydas v. Davis* because there is no significant likelihood of removal in the reasonably foreseeable future," (*id.* at 7); and (4) "Respondents' failure to abide by their own regulations entitles Petitioner to immediate release," (*id.* at 8).

As relief, Petitioner asks the Court for immediate release under an Order of Supervision with all his personal property. (*Id.* at 14). Petitioner also asks the Court to "[d]eclare that Petitioner's detention violates 8 C.F.R. § 241.13, the Fifth Amendment's Due Process Clause, and *Zadvydas v. Davis*; . . . [e]njoin the Respondents from transferring Petitioner to another detention facility;[4] . . . [and] [a]ward Petitioner his costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act."[5] (*Id.*)

In opposition, Respondents argue that (1) Petitioner will be removed in the reasonably foreseeable future, (Doc. 11, at 5); (2) the Petition is premature because Petitioner is detained within the presumptively reasonable period, (*id.* at 6); (3) the revocation of release followed all applicable procedures, (*id.* at 7-8); (4) the APA claim is unavailable because a habeas petition is the proper avenue for relief, (*id.* at 8); and (5) the Declaratory Judgment Act is not an independent basis for relief. (*Id.*)

Petitioner replied, arguing principally that it was Respondents' responsibility to contact Petitioner to schedule the next check-in and that the Declaration provided by

[4] The decision regarding where to detain non-citizens awaiting removal proceedings is a discretionary power of the Secretary of DHS, 8 U.S.C. § 1231(g)(1), which this Court lacks jurisdiction to review. 8 U.S.C. § 1252(a)(2)(B)(ii). *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (observing that "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal" and holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Therefore, this Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

[5] Petitioner's request for fees and costs under the Equal Access to Justice Act is premature. *See* 28 U.S.C. § 2412(d)(1)(B); *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

Respondents shows that Respondents have not yet obtained a travel document. (Doc. 12, at 2, 5).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

When a non-citizen has been ordered removed from the country, 8 U.S.C. § 1231(a) provides a 90-day period for the government to accomplish removal, during which detention is mandatory. This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien

normally is held in custody."). A removal order typically becomes administratively final "upon the earlier of": "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Thus, Petitioner's removal period began on January 18, 2003, when Petitioner did not file an appeal to the BIA by the deadline.

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, the Government retains discretionary authority to detain some aliens "beyond the removal period." § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). Section 1231(a)(6) does not specify how long relevant aliens may be detained beyond the removal period. However, the Supreme Court in *Zadvydas v. Davis* held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" because it would directly implicate the Fifth Amendment's Due Process Clause. *Id.* at 690. The Court consequently held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689. The Court further specified that detention is presumptively reasonable for only six months. *Id.* at 701. *See also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005) (reiterating "the reasonable period of post-removal detention is presumptively six months"). "After this 6–month period, once the

alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas,* 533 U.S. at 701.

Following the Supreme Court's holding, the due process concepts set forth in *Zadvydas* were codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[6] These regulations require ICE to release a non-citizen ordered removed from the United States under an OOS if there is no significant likelihood that the non-citizen will be removed in the reasonably foreseeable future. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by law.").

"Once ICE releases a non-citizen on an Order of Supervision, ICE's ability to re-detain that non-citizen is constrained by its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 771 (D. Minn. 2025). As relevant here, after ICE releases a non-citizen on an OOS, federal immigration officials may later revoke his OOS and return the non-citizen to

[6] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

custody if he violates conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Such revocation triggers a notification and review process:

> **Revocation procedures**. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3).

## V. Petitioner Is Not Entitled to Relief Under *Zadvydas* Because He Has Not Met His Initial Burden.

### A. Petitioner's *Zadvydas* Claim is Ripe.

Respondents maintain that because Petitioner's current detention has not been for a continuous period of six months, his claims are unripe and should be dismissed. (Doc. 11, at 6). The undersigned disagrees.

The Tenth Circuit has recognized three possible approaches to calculate the *Zadvydas* six-month presumptively reasonable period of detention. These three approaches

> focus on (1) only the time spent in the most recent period of detention (the 'latest detention' approach); (2) the time spent in the most recent period of detention plus any time previously spent in detention (the 'aggregated detention' approach); and (3) the time that has elapsed since the removal period was triggered.

*Abedi v. Carter*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *26 (10th Cir. Oct. 21, 2026) (citations and quotations omitted). The Tenth Circuit held in *Abedi v. Carter* that

"the third approach . . . is most consistent with *Zadvydas* . . . [and therefore] *Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered." *Id.* Analyzing *Zadvydas*, the Tenth Circuit found that there is "no basis in the Court's reasoning for adopting a new six-month presumption of reasonableness applicable to any period of detention that occurs after the removal period has expired." *Id.* The Court observed that "the primary reason for the six-month *Zadvydas* presumption—the reality that arranging a noncitizen's removal may take longer than the current ninety-day removal period—does not apply to periods of re-detention that occur months, years, or decades after the removal order has become final." *Id.* at *27. The Tenth Circuit explained that the expiration of the six-month presumptively reasonable period of detention

> does not instantly and automatically invalidate any immigration detention that extends longer than six months or that begins more than six months after the removal period has become final. The government is simply no longer entitled to a presumption of reasonableness for any detention that occurs outside of the initial six-month period following the removal order becoming final.

*Id.* at *28 (citations omitted).

Petitioner filed the instant Petition on September 16, 2026, more than 23 years after his removal period began. (Doc. 1). Accordingly, Petitioner is currently detained beyond *Zadvydas*'s presumptively reasonable six months, and the Court "must conduct a case-specific analysis to conclude whether the detention meets the *Zadvydas* reasonableness standard absent this presumption." *Abedi*, No. 25-3179, --- F.4th ----, 2026 WL 3149141, at *28.

**B. Petitioner Has Not Met His Initial Burden.**

To obtain habeas relief, a petitioner has the initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; *see also Soberanes*, 388 F.3d at 1311 ("If removal is not reasonably foreseeable, the court should hold continued detention unreasonable.") (citation modified). If the petitioner meets his initial burden, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

To meet his initial burden, "Petitioner must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Gomez v. Mattos*, No. 25-CV-00975-GMN-BNW, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding petitioner met his initial burden because he "has identified a barrier preventing him from being repatriated to [his home country], has demonstrated that he is not a citizen of any other country, and that ICE has not identified a third country that will accept him").

Petitioner has not identified any barriers to his repatriation to Vietnam. Petitioner only emphasizes the length of time since his order of removal became final. (Doc. 1, at 8). Petitioner also says that he has met his initial burden "because the legal bar to removal comes not from country conditions or logistics but from a final judicial determination in Petitioner's own proceedings." (*Id.*) However, the undersigned cannot identify any bar to Petitioner's removal in the record. Notably, Petitioner has not been granted withholding

of removal or similar relief. (Doc. 11, at Ex. 3, at 1). Only in his Reply does Petitioner allege that his removal is not significantly likely in the reasonably foreseeable future because Respondents have failed to remove Petitioner or produce a travel document in 23 years. (Doc. 12, at 5). However, Petitioner does not identify any reason why Vietnam would not issue a travel document after receiving Respondents' recent request. Petitioner does not allege that Vietnam has previously denied a document request for Petitioner.

On these facts, Petitioner has not met his initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Therefore, it is not necessary for the Court to determine whether Respondents have provided sufficient evidence to rebut Petitioner's showing.

## VI. Respondents Followed All Applicable Regulations in Revoking Petitioner's OOS.

Petitioner alleges Respondents failed to comply with the INA and with ICE's applicable regulations before re-detaining him after his prior release on an OOS. (Doc. 1, at 6-14). Under § 241.13(i), an OOS may be revoked in two circumstances: (1) where the non-citizen "violates any of the conditions of release," § 241.13(i)(1); or (2) where, based on "changed circumstances," ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future, § 241.13(i)(2). *See Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026). Subsection (i)(3) provides that, "[u]pon revocation," the non-citizen "will be notified of the reasons for revocation" and afforded an informal interview. § 241.13(i)(3). By its terms, this requirement applies to any revocation under § 241.13(i), regardless of whether the

revocation is based on an alleged violation of release conditions or on changed circumstances. *Tran*, 2026 WL 1181700, at *2.

The undersigned concludes that Respondents properly revoked Petitioner's OOS under § 241.13(i)(1) because Petitioner violated the conditions of his release when he did not report to ICE for six years. Petitioner argues that the revocation cannot be based on a violation of conditions because Respondents did not give Petitioner any new instructions after the ICE office was closed when he arrived for his appointment in October 2020. (Doc. 12, at 2). He submits that the original monthly reporting requirements did not apply because Respondents did not affirmatively reinstate them after scheduling check-ins individually in writing for 17 years. (*Id.*)

It is not Petitioner's fault that the ICE office was closed when he arrived for his appointment. But it was Petitioner's responsibility to report as required by the OOS. The exception to monthly reporting is expressly conditional. The order accounts for breakdowns in communication by putting the onus on Petitioner to "report in person on the 1st Thursday of every month at 9:00 AM . . . **unless** [Petitioner is] granted written permission to report on another date." (Doc. 12, at Ex. 1, at 2) (emphasis added). Petitioner was not "granted written permission to report on another date" because the office was closed, so he was required to "report in person on the 1st Thursday of every month at 9:00 AM." (*Id.*) Even if Respondents' actions manifested an intent to permanently suspend the original requirements, Petitioner could not reasonably rely on that manifestation to forgo reporting to ICE at all for six years.

The undersigned also concludes that when ICE re-detained Petitioner, they gave him proper notice and a prompt informal interview, as required by § 241.13(i)(3). In his Declaration to this Court, Deportation Officer McGettrick avers that Petitioner was served the Notice of Revocation of Release and afforded an informal interview on the day he was taken into ICE custody. (Doc. 11, at Ex. 1, at 1-2). Respondents provide the Notice of Revocation of Release, which states that Petitioner's release had been revoked because Petitioner violated a condition of his release when he failed to report as instructed in the OOS. (*Id.* at Ex. 4, at 1). Respondents also provide Petitioner's recorded statement from his informal interview. (*Id.* at Ex. 5). Accordingly, the undersigned finds that Respondents complied with all notice and interview requirements for revocation of the OOS.

Because Respondents properly revoked the OOS under § 241.13(i)(1) and complied with the requirements on § 241.13(i)(3), it is unnecessary for the Court to determine whether Respondents complied with § 241.13(i)(2) by establishing that changed circumstances made Petitioner's removal significantly likely in the reasonably foreseeable future.

## VII. Petitioner's APA Claim Should Be Denied.

The Court cannot grant Petitioner relief on Count III of the Petition. Petitioner's APA claim is improperly brought in a habeas action. "The APA provides a cause of action only where there is no other adequate remedy in court. *See* 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and 'must be brought in habeas.' *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). The relief Petitioner seeks, his release from custody, is attainable through habeas corpus. So, the APA does not supply an

independent cause of action." *Ali v. Warden Cimarron Corr. Facility*, No. CIV-26-655-PRW, 2026 WL 1538147, at *3 (W.D. Okla. June 1, 2026). Thus, the undersigned recommends that the Court deny relief under Count III.

## VIII. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petitioner's Petition, (Doc. 1), be **DENIED**.

**The Court advises the parties of their right to object to this Report and Recommendation by November 20, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The Court further advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 6th day of Novmeber, 2026.

Amanda L. Maxfield

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE